IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

_____
                                        )
JILIN FOREST INDUSTRY JINQIAO           )
FLOORING GROUP CO., LTD.,               )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        Court No.:  18-00191
                                        )
UNITED STATES,                          )
                                        )
            Defendant,                  )
                                        )
_____)

## NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant, the United States, respectfully submits notice of supplemental authority: *China Mfrs. Alliance, LLC v. United States,* Nos. 2020-1159, -1210 (Fed. Cir. June 10, 2021) (attached hereto as Exhibit 1). In its opinion and order, the Court of Appeals for the Federal Circuit reversed and remanded the decision of this Court in *China Mfrs. Alliance, LLC v. United States*, No. 15-124, finding, in part, that the

> country-wide NME entity rate may be an "individually investigated"
> rate within the meaning of 19 U.S.C. § 1673d(c)(1)(B)(i)(I), which
> Commerce may determine using its ordinary techniques of
> investigation. Commerce may permissibly assign such a rate to the
> unitary group of exporters in an NME country that have failed to
> rebut the presumption of government control. This rate may be based
> in whole or in part on {facts available} or {adverse facts available},
> and Commerce may carry forward an initial NME entity rate,
> including adverse inferences built into that rate, in subsequent
> administrative reviews.

*Id*. at 20.

On May 25, 2021, Defendant requested that the Court stay proceedings in this matter pending a final decision by the U.S. Court of Appeals for the Federal Circuit in *China*

*Manufacturers* because the remanded issue regarding the U.S. Department of Commerce's non-market economy policy substantially overlapped with the issue pending before the Federal Circuit in *China Manufacturers*. Specifically, the Court here remanded Commerce's application of its NME policy to mandatory respondent Jilin Forest where Jilin Forest failed to show that it was independent from the Chinese government. *See Jilin Forest v. United States*, Slip Op. 21-49 at 33 (April 29, 2021). The Court held that Commerce failed to explain why its NME policy should apply to rates determined for mandatory respondents when examining a limited number of exporters and/or producers in an antidumping proceeding or identify the provisions of the statute it has construed to conclude it may assign an NME-wide rate to such a mandatory respondent. *Id.* at 29. The proposed order submitted with the Government's motion provided for the parties to file a status report informing the Court of their positions regarding how the case should proceed within 30 days following the issuance of the mandate in *China Manufacturers*. We provide the attached decision because it further demonstrates the relevance of *China Manufacturers* to the Court's remand order and provides additional information regarding the timeframe of the Government's proposed stay.

<div style="margin-left:40%">

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/ Sonia M. Orfield
SONIA M. ORFIELD
Trial Attorney
U.S. Dept. of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480

</div>

OF COUNSEL:
Rachel Bogdan
Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
U.S. Department of Commerce

Washington,  D.C.                        Ben Franklin Station
                                         Washington,  D.C. 20044
                                         Telephone: (202) 353-0534
                                         E-mail:  Sonia.M.Orfield@usdoj.gov


June 14, 2021                            Attorneys for Defendant

# EXHIBIT 1

# United States Court of Appeals for the Federal Circuit

―――――――――――

**CHINA MANUFACTURERS ALLIANCE, LLC, DOUBLE COIN HOLDINGS LTD.,**
*Plaintiffs-Appellees*

**GUIZHOU TYRE CO., LTD., GUIZHOU TYRE IMPORT AND EXPORT CO., LTD.,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

―――――――――――

2020-1159

―――――――――――

Appeal from the United States Court of International Trade in Nos. 15-cv-00124-TCS, 15-cv-00128-TCS, Chief Judge Timothy C. Stanceu.

―――――――――――

Decided: June 10, 2021

―――――――――――

JAMES P. DURLING, Curtis, Mallet-Prevost, Colt & Mosle LLP, Washington, DC, argued for plaintiffs-appellees. Also represented by CHRISTOPHER A. DUNN, DANIEL L. PORTER; GENE C. SCHAERR, Schaerr Jaffe LLP, Washington, DC.

JOHN JACOB TODOR, Commercial Litigation Branch,

Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by BRIAN M. BOYNTON, JEANNE DAVIDSON, FRANKLIN E. WHITE, JR.; PAUL KEITH, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

———————————

Before LOURIE, CLEVENGER, and HUGHES, *Circuit Judges*.

CLEVENGER, *Circuit Judge*.

The United States appeals from the final judgment of the United States Court of International Trade ("Trade Court"), which held that the Department of Commerce ("Commerce") could not apply an existing China-wide antidumping duty rate, applicable to all Chinese exporters that had not demonstrated independence from the Chinese government, to Double Coin Holdings Ltd. ("Double Coin"), even though it is undisputed that Double Coin failed to demonstrate independence from the Chinese government. For the reasons set forth below, we reverse the final judgment of the Trade Court and remand for further proceedings consistent with this opinion.

## BACKGROUND

### Initial Investigation and Four Administrative Reviews

The background to this appeal begins with Commerce's antidumping investigation into "Certain New Pneumatic Off-The-Road Tires from the People's Republic of China." Commerce's Final Determination in this investigation encompassed a period of investigation from October 1, 2006 through March 31, 2007 and was published on July 15, 2008. *Certain New Pneumatic Off–The-Road Tires from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Partial Affirmative Determination of Critical Circumstances*, 73 Fed. Reg. 40,485, 40,485–92 (Dep't of Commerce July 15, 2008); *see*

*also Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Notice of Amended Final Affirmative Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 73 Fed. Reg. 51,624 (Dep't of Commerce Sept. 4, 2008). In antidumping investigations concerning countries with non-market economies ("NMEs"), such as the People's Republic of China ("PRC"), Commerce applies a presumption that all exporters are subject to government control. Our court has previously approved Commerce's application of a presumption of government control over exporters in NME countries, as well as Commerce's use of a single antidumping rate for an NME-wide entity composed of companies that have not demonstrated their independence from government control. *See Sigma Corp. v United States*, 117 F.3d 1401, 1405–06 (Fed. Cir. 1997). In its Final Determination, Commerce identified Double Coin as among the companies that had overcome the presumption of government control and assigned Double Coin a separate weighted-average antidumping margin.[1] The "PRC-wide entity," comprising all exporters that failed to overcome the presumption of government control (i.e., all exporters not individually listed in Commerce's Final Determination) was assigned a rate of 210.48%. Commerce calculated this rate from facts available with an adverse inference ("adverse facts available" or "AFA"), based on Commerce's determination that the PRC-wide entity had "failed to cooperate [with Commerce's investigation] to the best of its ability" because the record indicated that there were many exporters of subject merchandise who failed to respond to Commerce's questionnaires. *Certain New Pneumatic Off-The-Road Tires from the People's Republic of China; Preliminary Determination of Sales at Less Than Fair Value and Postponement*

---

[1]    Commerce initially assigned Double Coin a margin of 9.48%. 73 Fed. Reg. at 40,489. This margin was subsequently amended to 12.91%. 73 Fed. Reg. at 51,626.

*of Final Determination*, 73 Fed. Reg. 9278, 9285 (Dep't of Commerce Feb. 20, 2008); 73 Fed. Reg. at 40,488.

Commerce subsequently conducted three annual administrative reviews of the antidumping duty order.[2] Double Coin's individual assigned antidumping rate remained in place following each of these reviews. The PRC-wide entity rate remained at 210.48%. A fourth annual antidumping review was initiated by Commerce, but was rescinded before it was conducted after all parties that requested a review timely withdrew their requests.[3]

---

[2]   *See Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Final Results of the 2008–2009 Antidumping Duty Administrative Review*, 76 Fed. Reg. 22,871 (Dep't of Commerce April 25, 2011) (period of review February 20, 2008 through August 31, 2009); *Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Final Results of the 2009–2010 Antidumping Duty Administrative Review and Final Rescission, in Part*, 77 Fed. Reg. 14,495 (Dep't of Commerce March 12, 2012) (period of review September 1, 2009 through August 31, 2010); *Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Rescission, in Part; 2010–2011*, 78 Fed. Reg. 22,513 (Dep't of Commerce April 16, 2013) (period of review September 1, 2010 through August 31, 2011).

[3]   *Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Rescission of Antidumping Duty Administrative Review; 2011–2012*, 78 Fed. Reg. 33,059 (Dep't of Commerce June 3, 2013) (review period September 1, 2011 through August 31, 2012).

Fifth Administrative Review and
Trade Court Proceedings

Notice of initiation of the fifth administrative review (the review on appeal in this case) was published in November 2013. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 78 Fed. Reg. 67,104 (Dep't of Commerce Nov. 8, 2013). Double Coin was selected as a mandatory respondent in this review. *Id.* at 67108; *see also* J.A. 168–226, 168[4] (Issues and Decision Memorandum for Final Results of Antidumping Duty [Fifth] Administrative Review). Double Coin fully cooperated with Commerce during the course of the fifth administrative review.

Based on the information Double Coin submitted to Commerce during the review, Commerce initially calculated a *de minimis* 0.14% final antidumping margin for Double Coin. J.A. 371. However, Commerce also determined that Double Coin had "failed to demonstrate absence of *de facto* government control over export activities due to the fact that its controlling shareholder is wholly owned by the State-owned Assets Supervision and Administration Commission of the State Council and the significant level of control this majority shareholder wields over the respondent's Board of Directors," and was thus not eligible for its separate rate.[5] *Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review; 2012–2013*, 79 Fed. Reg. 61,291, 61,293 (Dept. of Commerce Oct. 10, 2014); *see also Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Amended Final*

---

[4]    Citations to "J.A. ___" refer to the joint appendix filed by the parties to this appeal.

[5]    Double Coin does not appeal Commerce's factual determination that Double Coin failed to demonstrate *de facto* independence from Chinese government control.

*Results of Antidumping Duty Administrative Review; 2012–2013*, 80 Fed. Reg. 26,230 (Dep't of Commerce May 7, 2015). Commerce's policy, which we have approved, is that exporters that fail to demonstrate independence from government control do not qualify for a separate rate. *Transcom, Inc. v. United States*, 294 F.3d 1371, 1373 (Fed. Cir. 2002); *see also* 78 Fed. Reg. at 67,111 n.10 (*Initiation Notice* of fifth administrative review, stating that exporters who do not qualify for a separate rate will be deemed part of a single China-wide entity).

Commerce's practice in place at the time of the fifth administrative review was to conditionally review the NME entity during an administrative review of an antidumping duty order if one or more of the exporters subject to the review did not demonstrate that it was separate from the NME entity (i.e., did not overcome the presumption of government control). J.A. 178–79. Thus, Commerce's *Initiation Notice* for the fifth administrative review put the PRC entity in this case on notice that it was conditionally subject to the review: "If one of the above-named companies does not qualify for a separate rate, all other exporters of Certain New Pneumatic Off-the-Road Tires [from] the PRC who have not qualified for a separate rate are deemed to be covered by this review as part of the single PRC entity of which the named exporters are a part." *See* 78 Fed. Reg. at 67,111 n.10.

Following from Double Coin's failure to overcome the presumption of control by the Chinese government, the PRC-wide entity (including Double Coin) became subject to the fifth administrative review. J.A. 179. Commerce thus reviewed the assigned PRC-wide antidumping rate, which had previously been set at 210.48%. Because Double Coin fully cooperated with Commerce and had provided Commerce with its verified sales and production data (resulting in the calculated rate of 0.14%), but no other portion of the PRC entity had provided data to Commerce, Commerce determined that it was "able to calculate a margin for an

unspecified portion of a single PRC-wide entity [i.e. Double Coin], but cannot do so for the remaining unspecified portion of the entity [i.e., any and all other exporters in the PRC-wide entity]." 79 Fed. Reg. at 61,293. Commerce thus performed a simple average of the previous PRC-wide rate and the calculated rate for Double Coin, to arrive at a final rate of 105.31% applicable to the PRC-wide entity (including Double Coin). 80 Fed. Reg. at 26,231.

Multiple companies, including Double Coin, challenged the Final Results of the fifth administrative review before the Trade Court. *See China Mfrs. Alliance, LLC v. United States*, 205 F. Supp. 3d 1325 (Ct. Int'l Trade 2017) (*CMA I*). In *CMA I*, the Trade Court concluded that because Commerce had selected Double Coin to participate in the review as a mandatory respondent and had calculated an individual rate for Double Coin (prior to determining that Double Coin failed to demonstrate independence from the Chinese Government), the antidumping statute 19 U.S.C. § 1677f-1(c) required Commerce to assign the calculated individual rate of 0.14% to Double Coin, notwithstanding Commerce's policy to assign the PRC-wide entity rate to manufacturers that failed to demonstrate independence from the Chinese government. 205 F. Supp. 3d at 1339–41. The Trade Court determined that, because Double Coin fully cooperated with Commerce's investigation, Commerce could not lawfully carry forward against Double Coin the adverse inferences built into the original PRC-wide 210.48% rate, because to do so would apply a punitive rate to a cooperating party. 205 F. Supp. 3d at 1334–41. The Trade Court held that Commerce could not permissibly assign any rate other than the 0.14% calculated rate to Double Coin, and remanded the case to Commerce for further proceedings. In its Remand Redetermination, Commerce assigned the *de minimis* 0.14% rate to Double Coin under respectful protest. J.A. 705. Various parties again contested the Remand Redetermination before the Trade Court. J.A. 72–73.

The Intervening *Diamond Sawblades* Decision

After Commerce issued its Remand Redetermination but before the Trade Court issued its opinion in *China Mfrs. Alliance, LLC v. United States*, 357 F. Supp. 3d 1364 (Ct. Int'l Trade 2019) (*CMA II*) reviewing the challenges to the Remand Redetermination, we issued our opinion in *Diamond Sawblades Manufacturers Coalition v. United States*, 866 F.3d 1304 (Fed. Cir. 2017), which reviewed Commerce's first administrative review of the underlying antidumping order. Like this case, *Diamond Sawblades* involved a fully cooperating non-independent exporter who was assigned an antidumping rate as part of the PRC-wide entity, which rate was based in part on AFA.

Specifically, *Diamond Sawblades* concerned an antidumping rate assigned to a group of affiliated Chinese exporters of diamond sawblades, the group identified as the Advanced Technology & Materials Co. ("ATM"). In the original investigation that led to the antidumping order, ATM was determined to have overcome the presumption of Chinese government control, was individually investigated, and was assigned an individual antidumping rate of 2.50%. The Diamond Sawblades Manufacturers Coalition, on behalf of the United States domestic industry, appealed the final antidumping order, and the Trade Court remanded the case for further explanation of the test used to determine independence, and other evidence of record. On remand, Commerce again found ATM independent of Chinese government control, and hence entitled to its 2.50% antidumping rate. After yet another appeal to the Trade Court, the case was again remanded for further review of ATM's status. On that remand, Commerce determined that ATM had failed to rebut the presumption of government control and was thus not qualified for its individually investigated rate. ATM unsuccessfully appealed that determination to the Trade Court, and then to this court, which affirmed Commerce's determination without opinion under our Rule 36. *Advanced Tech. & Materials Co.*

*v. United States*, 541 F. App'x 1002 (Fed. Cir. 2013). While ATM's status was *sub judice* before the Trade Court and this court, Commerce's first administrative review of the diamond sawblades antidumping order commenced. In the initial proceedings Commerce designated ATM as a mandatory respondent, found it to be independent of Chinese government control, and with ATM fully cooperating, assigned ATM an individually investigated antidumping rate of 0.15%. After judicial confirmation that ATM was not independent, Commerce determined that ATM was disqualified from its 0.15% individually investigated rate. The then-governing PRC-wide entity rate for non-independent exporters (established through AFA in the original investigation) was 164.09%. Commerce reviewed and updated the existing PRC-wide rate in the first administrative review proceedings by calculating a simple average of the existing rate with ATM's 0.15% rate to set a new PRC-wide rate of 82.12%. *See Diamond Sawblades*, 866 F.3d at 1307–11 (citing *Diamond Sawblades Mfrs. Coal. v. United States (Remand Redetermination)* at 9, Court No. 13-00078 (Dep't of Commerce Apr. 10, 2015), http://enforcement.trade.gov/remands/14-50.pdf).

ATM unsuccessfully appealed to the Trade Court, which affirmed Commerce's application of the PRC-wide rate to ATM. ATM then appealed to this court. In deciding *Diamond Sawblades*, we rejected ATM's argument that, because ATM cooperated with the first administrative review, Commerce could not apply a PRC-entity rate to ATM which was derived in part from a rate based on AFA. *Id.* at 1310–11. We held that because it had failed to rebut the presumption of government control, ATM was subject to the PRC-wide rate, and that the calculation of the PRC-wide rate using AFA did not change this result. *Id.* at 1312–13. Over ATM's challenge to application of an AFA-based rate to it, we expressly approved as lawful "Commerce's use of the previously established PRC-wide entity rate to calculate an updated PRC-wide entity rate that

applies to ATM in this administrative review . . . ." *Id*. at 1314. We further observed that "[t]he CIT . . . concluded that Commerce's decision was a review of the PRC-wide entity *rate* within the meaning of 19 U.S.C. § 1675(a), not a review of the makeup of the PRC-wide entity." *Id*. at 1309–10 (internal citation omitted). Though "Commerce expressly found that the PRC-wide entity included ATM and 21 other companies[,]" "Commerce did not address the cooperation—or lack thereof—of other companies that make up the PRC-wide entity." *Id*. at 1313–14. It was thus ATM's failure to rebut the presumption of government control, not the composition of the PRC-wide entity or the cooperation or non-cooperation of ATM or any other potential member of the PRC-wide entity, that validated Commerce's determination to apply the AFA-derived PRC-wide rate to ATM.

### Post-Remand Proceedings in Trade Court

Returning to the case here now on appeal, various parties filed comments on Commerce's Remand Redetermination (issued pursuant to the Trade Court's opinion in *CMA I*). Double Coin did not comment on the Remand Redetermination. *CMA II*, 357 F. Supp. 3d at 1369. The government also filed a motion before the Trade Court seeking a partial remand for Commerce to revisit the issue of Double Coin's margin in light of our intervening decision in *Diamond Sawblades*, which Double Coin opposed. *Id*. at 1367–68. Unsurprisingly, the government viewed our holding in *Diamond Sawblades* to foreclose any challenge Double Coin could mount against application of the PRC-wide rate to it.

The Trade Court correctly understood our decision in *Diamond Sawblades* to authorize Commerce to assign a partially AFA-based PRC-wide entity rate to a fully cooperating exporter selected as a mandatory respondent that fails to rebut the presumption of government control. *Id*. at 1382. Nonetheless, the Trade Court perceived a difference between the facts in this case and in *Diamond Sawblades*

that prohibited Commerce from assigning the 105.31% PRC-wide entity rate to Double Coin. In this case, the Trade Court emphasized that all parties to the administrative review cooperated with Commerce, and that Commerce "did not find the PRC-wide entity, or any portion of it, to be an uncooperative respondent in the [fifth administrative] review." *Id.* at 1380. But in *Diamond Sawblades*, the PRC-wide entity included twenty-one companies that did not cooperate in the first administrative review. *Id.* at 1383 n.11. The Trade Court treated our decision in *Diamond Sawblades* to condition our approval of the AFA-based PRC-wide entity rate for ATM on the lack of cooperation of part of the PRC-wide entity in that case, and thus to make our decision in *Diamond Sawblades* inapplicable to the situation where all parties to a review fully cooperate with Commerce. Because no party to the review proceeding in this case failed to cooperate so as to warrant lawful application of an AFA-based rate, the Trade Court held that the PRC-wide rate must be fixed at the 0.14% rate individually investigated for Double Coin. Having distinguished *Diamond Sawblades*, the Trade Court denied the government's motion for partial remand on the ground that the only permissible rate for Double Coin is the 0.14% rate previously mandated by the Trade Court. *Id.* at 1382.[6]

The case was again remanded to Commerce on matters related to exporters other than Double Coin. Commerce's second Remand Redetermination was again appealed to the Trade Court, which affirmed all of Commerce's

---

[6]    As discussed below, we disagree with the Trade Court that the non-cooperation of some identified portion of the PRC-wide entity with the administrative review on appeal was a predicate to our decision in *Diamond Sawblades*, and we accordingly disagree with the Trade Court that *Diamond Sawblades* can be distinguished from this case on that ground.

decisions, including the 0.14% rate assigned to Double Coin. *China Mfrs. Alliance, LLC v. United States*, No. 15-00124, 2019 WL 4165274 (Ct. Int'l Trade Sept. 3, 2019) (*CMA III*).

The United States timely appeals from the Trade Court's final judgment in *CMA III*. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). For the reasons discussed below, we reverse the final judgment of the Trade Court.

## DISCUSSION

We apply the same standard of review as was applied by the Trade Court, without deference. *Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005); *SNR Roulements v. United States*, 402 F.3d 1358, 1361 (Fed. Cir. 2005). Accordingly, we uphold Commerce's determination unless it is "unsupported by substantial evidence . . . or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see Dupont Teijin*, 407 F.3d at 1215; *SNR Roulements*, 402 F.3d at 1361. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951).

The question before the court is whether Commerce is justified in assigning the 105.31% PRC-wide entity rate to Double Coin in this case. The government argues that our decision in *Diamond Sawblades* governs this case because, in its view, the record in that case is not materially different from the record in this case; consequently, Commerce lawfully applied a carried-forward PRC-wide rate to an exporter who failed to rebut the presumption of government control. Double Coin counters, arguing that the records of the two cases materially differ. In this case, the only identified member of the PRC-wide entity is Double Coin, but in the *Diamond Sawblades* first annual review, there were other members of the PRC-wide entity identified in the

review. According to Double Coin, the permissibility of applying the carried-forward PRC-wide rate in this case hinges on the presence of such other members of the PRC-wide entity, and absent any such other members in this case, the Trade Court correctly blocked application of the PRC-wide rate and instead required application of the 0.14% rate to Double Coin. For the reasons set forth below, we reject the ground relied upon by the Trade Court to distinguish our decision in *Diamond Sawblades*, and also reject as immaterial the distinction Double Coin draws between this case and *Diamond Sawblades*. Consequently, no basis has been argued to preclude Commerce from applying to this case the same analysis and rationale it used in *Diamond Sawblades* to sustain the applicable PRC-wide entity rate.

Legal Authority for NME Entity-Wide Antidumping Rates

Double Coin argues that Congress has specifically provided for only two kinds of rates in antidumping investigations. For support, it cites 19 U.S.C. § 1673d(c)(1)(B)(i), which provides in subpart (I) for a rate "for each exporter and producer individually investigated," and in subpart (II) for "the estimated all-others rate for all exporters and producers not individually investigated." Double Coin acknowledges 19 C.F.R. § 351.107(d), an antidumping proceeding regulation, which reads as follows:

> (d) *Rates in antidumping proceedings involving nonmarket economy countries.* In an antidumping proceeding involving imports from a nonmarket economy country, "rates" may consist of a single dumping margin applicable to all exporters and producers.

Because Congress has expressly provided for only two kinds of rates in antidumping proceedings, Double Coin argues that this regulation cannot serve as authority to create and impose a third kind of rate, to be applicable to exporters or producers from NME countries who fail to

rebut the presumption of government control. The government does not disagree with Double Coin on this point, and indeed agrees with Double Coin that a lawful antidumping rate for an NME-wide entity must be one of the two rates specified in § 1673d.

The government argues that the rate assigned to the PRC-wide entity in this case is a rate for the defined entity, and is a rate that was individually investigated for that group. Double Coin disagrees, arguing first that Commerce lacks authority to treat the entity as an "each exporter" under the statute, and additionally, even if Commerce has authority to recognize the PRC-wide entity as an "each exporter," the PRC-wide rate in this case cannot stand because it was not "individually investigated."

As to whether Commerce may treat a group of exporters in an NME-economy as a single, separate exporter for purposes of receiving an antidumping rate, Double Coin recognizes that binding cases (too numerous to list in their entirety) have uniformly sustained Commerce's recognition of an NME-wide entity as a single exporter for purposes of assigning an antidumping rate to the individual members of the entity. *See*, *e.g.*, *Michaels Stores, Inc. v. United States*, 766 F.3d 1388, 1390–91 (Fed. Cir. 2014). But Double Coin questions here the authority for Commerce to so recognize such an NME-wide entity. Although 19 C.F.R. § 351.107 may bar an additional kind of antidumping rate, Double Coin does not come to grips with the clear authority provided by the regulation for Commerce to fashion a single rate for all exporters and producers that qualify for the single rate. We think it clear that Commerce may, where the facts warrant, recognize a single NME-wide entity to include all exporters that fail to rebut the presumption of government control. The authority question left in this case is thus whether the PRC-wide rate in this case can fairly be understood as a rate investigated for the single PRC-wide entity. We think, contrary to Double Coin's view, that

the PRC-wide rate in this case qualifies as individually investigated.[7]

It is true, as Double Coin notes, that in the fifth administrative review the members of the PRC-wide entity (other than Double Coin, the later-arriving member of the entity) were not individually investigated. Double Coin, of course, was so investigated and given its individually investigated rate, which it forfeited upon its failure to rebut the presumption of government control. But the non-Double Coin members of the PRC-wide entity were investigated in the initial investigation. As the government explains, "Commerce investigated the exporters in China during its initial investigation and calculated a single, China-wide entity rate to be applied to exporters who fail to establish independence from state control." *See* Appellant Reply Br. at 6. In the initial antidumping investigation, Commerce sent quantity and value questionnaires to ninety-four identified

---

[7] The subject of what kind of antidumping rates Commerce may legally apply in antidumping investigations was under adjudication in another case before the Trade Court during the time this case was also pending before the Trade Court. In *Thuan An Production Trading & Service Co. v. United States*, the Trade Court held that the only permissible rates for antidumping proceedings are the two specified in 19 U.S.C. § 1673d(c)(1)(B)(i)(I)–(II), and that 19 C.F.R. § 351.107(d) does not provide authority for a third kind of rate. 348 F. Supp. 3d 1340, 1347–48 (Ct. Int'l Trade 2018) (*Thuan An I*). Following a remand, the Trade Court further held that the rate established for the PRC-wide entity in that case qualified as "individually investigated" within the meaning of § 1673d(c)(1)(B)(i)(I). *Thuan An Prod. Trading & Serv. Co. v. United States*, 396 F. Supp. 3d 1310, 1315–19 (Ct. Int'l Trade 2019) (*Thuan An II*). The final decision in *Thuan An II* was not appealed to this court.

Chinese exporters, and received responses from only thirty. Based on that information, Commerce identified an entity composed of uncooperative exporters, who had failed to rebut the presumption of government control and for whom Commerce had no individual data. Accordingly, Commerce calculated an AFA rate for this PRC-wide entity. The PRC-wide entity rate resulting from Commerce's initial investigation constitutes an "individually investigated" weighted average dumping margin within the meaning of § 1673d(c)(1)(B)(i)(I) because "Commerce treats the companies comprising the China-wide entity as a single entity and investigated them as such in the original investigation." *See* Appellant Reply Br. at 6. Double Coin fails to establish that any additional investigation into the country-wide entity is required in order to comport with the statute in carrying this investigated rate forward into later administrative review proceedings. Our decision in *Diamond Sawblades* confirmed that Commerce may carry forward an initial NME entity rate, including the adverse inferences built into that rate, in subsequent administrative reviews. 866 F.3d at 1314–15.

### Application of PRC-Wide Rate in This Case

Commerce determined that the proper PRC-wide entity rate in the fifth annual review is a simple average of the carried-forward AFA-based PRC-wide rate of 210.48% and Double Coin's 0.14% investigated rate, for a PRC-wide rate of 105.31%.[8] Commerce's authority generally to carry forward pre-existing AFA-based PRC-wide rates was sustained in *Dongtai Peak Honey Industry Co. v. United*

---

[8]    We understand Double Coin to challenge the propriety of carrying forward the previously established 210.48% PRC-wide rate into the fifth annual review, but if the carrying forward is permissible, not to challenge the averaging methodology used by Commerce to calculate the 105.31% rate.

*States*, 777 F.3d 1343, 1356 (Fed. Cir. 2015), and Double Coin points to no precedent that precludes the discretion Commerce exercised in averaging the two rates in this case. *See Sigma*, 117 F.3d at 1405 (Commerce "has broad authority to interpret the antidumping statute and devise procedures to carry out the statutory mandate."). The Trade Court correctly understood our holding in *Diamond Sawblades* to authorize a PRC-wide rate for Double Coin, but the court concluded that Commerce is barred from applying an AFA-based PRC-wide rate to a cooperating exporter following an administrative review in which no member of the PRC-wide entity failed to cooperate with Commerce. Because the record in *Diamond Sawblades* showed that twenty-one exporters within the PRC-wide entity had not cooperated with Commerce, the Trade Court interpreted our *Diamond Sawblades* decision to condition its holding on the presence of non-cooperating PRC-wide entity members in the annual review. Thus distinguishing *Diamond Sawblades*, the Trade Court concluded that the only permissible rate for Double Coin on the record of this case is its 0.14% rate.

In *Diamond Sawblades*, a mandatory respondent (ATM) who cooperated with the review and supplied sufficient data for calculation of an individual rate for it, but who failed to rebut the presumption of government control, was denied its individually investigated rate and instead given an AFA-based PRC-wide rate set by investigation in the underlying antidumping investigation. In that case, as in this case, Commerce did not review the composition of the PRC-wide entity, or data particular to the exports of members of the PRC-wide entity, but did review the PRC-wide rate.[9] The other 21 identified members of the PRC-

---

[9]    *See Diamond Sawblades*, 866 F.3d at 1309 (noting lack of information concerning other members of the PRC-wide entity and review of only the PRC-wide rate).

wide entity, like Double Coin in this case, joined the PRC-wide group after failing to rebut the presumption of government control. *See* Appellant Br. at 30. The review of the PRC-wide rate consisted of Commerce's carrying forward of the preexisting AFA-based PRC-wide entity rate, in combination with a simple averaging of ATM's individually investigated rate, to calculate an updated PRC-wide entity rate. *Diamond Sawblades*, 866 F.3d at 1314. In *Diamond Sawblades*, the cooperation (or lack thereof), or even the presence, of other exporters who made up the composition of the PRC-wide entity was immaterial to Commerce's decision to apply the PRC-wide rate to ATM, and was similarly considered immaterial by this court. We found "no issue with Commerce's use of the previously established PRC-wide entity rate to calculate an updated PRC-wide entity rate that applies to ATM." *Id*. Because the conduct of members of a PRC-wide entity is not a condition necessary to sustain an AFA-based PRC-wide entity rate for a cooperating mandatory respondent who joins the PRC-wide entity during a review, this case cannot be distinguished from *Diamond Sawblades*. As we perceive no material difference between the record upon which Commerce established its PRC-wide rate in the two cases, we conclude that Commerce was within the law in assigning the 105.31% PRC-wide entity rate to Double Coin.

Double Coin nonetheless points to numerous past cases involving PRC-wide antidumping rates in which numerous members of the PRC-wide entity were present before Commerce during the relevant investigations,[10] and in which other exporters fell into the PRC-wide entity upon failure

---

[10]  *See, e.g., Albemarle Corp. v. United States*, 821 F.3d 1345 (Fed. Cir. 2016); *Michaels Stores*, 766 F.3d 1388; *Transcom, Inc. v. United States*, 294 F.3d 1371 (Fed. Cir. 2002); *Sigma Corp. v. United States*, 117 F.3d 1401 (Fed. Cir. 1997).

to rebut the presumption of government control. Double Coin suggests that the presence of other PRC-entity members in those cases was a legal prerequisite to application of the PRC-wide rate to the exporters who fell into the group after failing to rebut the key presumption. But none of those cases state such a prerequisite, and we see no reason to read such a prerequisite into those cases. Double Coin also makes much of the fact that in this case, Commerce did not review exports by other members of the PRC-wide entity. But Double Coin has not pointed to any record evidence in Commerce's proceedings in *Diamond Sawblades* showing review by Commerce of exports by any of the other members of the PRC-wide entity in that case.[11] As our decision in *Diamond Sawblades* recognized, focus on the other members of the PRC-wide entity was not a condition upon which the legality of the PRC-wide rate depended. The fact that Double Coin is the only member of the PRC-wide group identified by name in the fifth annual review in this case does not undermine the assignment of the PRC-wide entity rate to Double Coin. Double Coin entered the fifth annual review knowing that Commerce was carrying forward a preexisting PRC-wide rate, based on AFA, for application to any exporter who failed to rebut the presumption of government control. Double Coin sought, but failed, to rebut the presumption of government control. Double Coin has not convinced us that application of the PRC-wide rate to it is unlawful, but the government has convinced us that the Trade Court erred in blocking Commerce from applying the PRC-wide rate to Double Coin.

## CONCLUSION

We have previously affirmed Commerce's practice of applying a rebuttable presumption that all companies

---

[11]  Our independent review of Commerce's actions in *Diamond Sawblades* also did not reveal any assessment of exports by other members of the PRC-wide entity.

within an NME country are subject to government control. *Sigma*, 117 F.3d at 1405. We now confirm that the resulting country-wide NME entity rate may be an "individually investigated" rate within the meaning of 19 U.S.C. § 1673d(c)(1)(B)(i)(I), which Commerce may determine using its ordinary techniques of investigation. Commerce may permissibly assign such a rate to the unitary group of exporters in an NME country that have failed to rebut the presumption of government control. This rate may be based in whole or in part on FA or AFA, and Commerce may carry forward an initial NME entity rate, including adverse inferences built into that rate, in subsequent administrative reviews. *Diamond Sawblades*, 866 F.3d at 1312–15. As we concluded in *Diamond Sawblades*, where a respondent in an NME country cooperates with an investigation or review but fails to rebut the presumption of government control, Commerce may permissibly apply the country-wide NME entity rate. This conclusion applies whether or not other members of the NME-wide entity are identified by name and subject to the administrative review at issue. For the reasons discussed, we conclude that Commerce's application of the 105.31% PRC-wide entity rate to Double Coin was not contrary to law and was reasonable on the facts of this case. Accordingly, we reverse the final judgment of the Trade Court and remand the case with instructions to return the case to Commerce for it to proceed in a manner consistent with this opinion.

## REVERSED AND REMANDED

### COSTS

No costs.

# United States Court of Appeals
# for the Federal Circuit

———————————

**CHINA MANUFACTURERS ALLIANCE, LLC,
DOUBLE COIN HOLDINGS LTD.,**
*Plaintiffs-Appellees*

**GUIZHOU TYRE CO., LTD., GUIZHOU TYRE
IMPORT AND EXPORT CO., LTD.,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

———————————

2020-1159

———————————

Appeal from the United States Court of International Trade in No. 15-cv-00124-TCS, 15-cv-00128-TCS, Chief Judge Timothy C. Stanceu.

———————————

**JUDGMENT**

———————————

THIS CAUSE having been considered, it is

ORDERED AND ADJUDGED:

**REVERSED AND REMANDED**

ENTERED BY ORDER OF THE COURT

June 10, 2021                    /s/ Peter R. Marksteiner
                                Peter R. Marksteiner
                                Clerk of Court