## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  The Honorable Richard K. Eaton, Judge

|  |  |
|---|---|
| JILIN FOREST INDUSTRY JINQIAO FLOORING GROUP CO., LTD., | |
| Plaintiff, | |
| v. | Court No. 18-00191 |
| UNITED STATES, | |
| Defendant. | |
| | **PUBLIC DOCUMENT** |

## PLAINTIFF'S COMMENTS ON COMMERCE'S FINAL RESULTS OF REDETERMINATION PURSUANT TO REMAND ORDER

Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC  20006
Phone (202 461-3100

*Counsel to Jinqiao Flooring*

December 16, 2021

## **TABLE OF CONTENTS**

**Page**

**I.**     **Jinqiao Flooring's Separate Rate Status** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

**II.**    **Jinqiao Flooring's Status As A Mandatory Respondent** . . . . . . . . . . . . . . . . 9

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>COURT CASES</u>

*Jilin Forest Industry Jinqiao Flooring Group Co., Ltd. v. United States*,
Slip Op. 21-49 (April 29, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **et passim**

### <u>DOC DETERMINATIONS</u>

*Aluminum Foil from the People's Republic of China:*
 *China's Status as a Non-Market Economy,* (October 26, 2017) . . . . . . . . . . . . . . . . **et passim**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  The Honorable Richard K. Eaton, Judge

JILIN FOREST INDUSTRY JINQIAO
FLOORING GROUP CO., LTD.,

                         Plaintiff,

              v.

UNITED STATES,

                         Defendant.

Court No. 18-00191

**PUBLIC DOCUMENT**

**PLAINTIFF'S COMMENTS ON COMMERCE'S
FINAL RESULTS OF REDETERMINATION
PURSUANT TO REMAND ORDER**

Plaintiff Jilin Forest Industry Jinqiao Flooring Group Co., Ltd. ("Jinqiao Flooring")
hereby comments on Commerce's Final Results of Redetermination Pursuant to Remand Order
("Remand Results") issued pursuant to the Court's Remand Order issued in *Jilin Forest Industry
Jinqiao Flooring Group Co., Ltd. v. United States*, Slip Op. 21-49 (April 29, 2021) ("Remand
Order").  In its Remand Order, the Court held that: (1) Commerce's determination of *de facto*
government control of Jinqiao lacks the support of substantial evidence and is not in accordance
with law; and (2) Commerce failed to explain how the application of its non-market economy
("NME") presumption to Jinqiao after the company was selected for individual examination was
in accordance with  law and supported by substantial evidence.

128904746.1

Jinqiao Flooring addresses both issues below.  For the reasons provided herein the Court should reject Commerce's remand results as they are unchanged from the final results from which this appeal arose.  Commerce's additional explanations remain unsupported by substantial evidence and are otherwise not in accordance with law.  A second remand should be issued with instructions for Commerce to address properly the Court's concerns as outlined in the April 29, 2021 Remand Order.

I.   **<u>Jinqiao Flooring's Separate Rate Status</u>**

Although Jinqiao Flooring is majority owned by two entities that are majority controlled by the Chinese Government, during the administrative proceeding Jinqiao Flooring demonstrated that it was entitled to separate rate status in accordance with the provisions in the company's articles of association (by-laws) that placed control of the company squarely with a labor union ( a minority shareholder) and Jinqiao Flooring's Board of Directors, and not with the Chinese government majority shareholders.  Under the provisions of Jinqiao Flooring's Articles or Association (*i.e.*, bylaws), the labor union was entitled to appoint 3 of the 5 members of the Board of Directors.  The two government-owned majority shareholders were entitled to appoint one member each to the Board of Directors.  Since the Labor Union controlled the majority of the Board of Directors, and the bylaws designated the Board of Directors as the sole management body of the company, Jinqiao Flooring properly certified that the company's specified export activities were not subject to the control or oversight of the Chinese government and that the company was therefore entitled to a separate rate as was granted in the initial investigation and the four previous administrative reviews.  Citing to the relevant provisions of the Articles of Association that governed the operation of the Labor Union, Jinqiao Flooring noted  that there

was no record evidence demonstrating that the Labor Union was influenced or controlled by any Chinese government entity.

     In the final results, Commerce cited to a report that was issued in the context of the initial investigation of a separate antidumping duty investigation that reconfirmed the status of the People's Republic of China as a non-market economy country.  *See Aluminum Foil from the People's Republic of China: China's Status as a Non-Market Economy,* (October 26, 2017) ("*Aluminum Foil Report*").  Based on that report, Commerce's final results determined that that Jinqiao Labor Union was a Chinese government entity and that Jinqiao Flooring was therefore a 100% government owned company and did not establish its entitlement to a separate company rate.  Although Commerce cited to the *Aluminum Foil Report*, the report itself was not part of the administrative record before Commerce or filed with the Court.

     Commerce did place the *Aluminum Foil Report* on the record of this remand proceeding. The *Aluminum Foil Report*, however, whether as a mere a citation in the final results, or as a document placed on the record of this remand, is simply not relevant to this case, a position that Jinqiao Flooring has maintained consistently throughout this  litigation.  First, The *Aluminum Foil Report* was issued on October 26, 2017.  The period of review of the underlying administrative proceeding (the fifth administrative review), however, is November 2015 – October 2016.  Consequently, the ending date of the subject period of review pre-dates the issuance of Commerce's *Aluminum Foil Report* by almost one year.  Thus, any findings contained in the *Aluminum Foil Report* simply do not relate to the period of review subject to this litigation.

     Second,  the Aluminum Foil report was issued in the context of a completely different administrative proceeding with a distinct administrative record.  Importantly, the inquiry in the

*Aluminum Foil* report concerned China's continued status as an NME country. Specifically, the inquiry as to the status of Chinese labor unions was made to determine whether wage rates in China were determined by free bargaining between labor and management.  Yet, at no point in this proceeding did Jinqiao Flooring or any other interested party challenge the status of China as an NME economy under the antidumping duty law.  Commerce's Remand Results freely admits that no party in this instant proceeding challenged China's status as an NME country.  Remand Results at 4.

The issue in this remand proceeding, however, is whether Jinqiao Flooring's selection of its management by the labor union, or the operation of its other export activities, were made in the absence of Chinese government control.  The general status of labor unions in China is simply not relevant as to whether or not under the administrative record in this case establishes whether the Jinqiao Labor Union, acting in accordance with the provisions of Jinqiao Flooring's Articles of Association during the period of review, operated free from Chinese government control.

Commerce concluded that Chinese "labor unions in are under the control and direction of the All-China Federation of Trade Unions (ACFTU)", and that the *Aluminum Foil Report* concluded that "(1) the ACFTU has a legal monopoly over all trade union activities; (2) the Chinese government prohibits independent unions; and (3) the ACFTU presides over a network of subordinate trade unions.   Remand Results at 12-13.  Commerce's remand results however, failed to cite to any record evidence that would even suggest, under the circumstances of this case, that the ACFTU exerted control over the Jinqiao labor union's selection of Jinqiao Flooring's management or any of its export activities during the relevant period of review. Despite the fact that Commerce opened the record to add the *Aluminum Foil Report*,

Commerce's Remand Results are devoid of any attempt whatsoever to seek additional information from Jinqiao Flooring regarding whether the ACFTU exercised control or influenced any of the activities of this Labor Union during the period of review.

Further, Commerce's Remand Results failed to comport with the Court's remand instructions that Commerce "shall also consider any relevant argument presented by Jilin to Commerce on the issue of state control."   Slip Op. 21-49 at 12 and 33-34 (April 29, 2021).  As in the final results, Commerce's Remand Results continue to ignore all record information and legal arguments presented by Jinqiao Flooring that establish that through operation of the company's Articles of Incorporation, the selection of company management and export operations are placed solely with the minority owning Jinqiao Labor Union and the Board of Directors that are controlled by the Jinqiao Labor Union, and that the Labor Union's activities is not controlled by the Chinese government.

It is evident that the Remand Result's separate rate analysis Commerce did not take into account the entirety of the four *de facto* factors that are normally used to evaluate whether the government exercised control of a company's export functions or activities.  Import Administration Policy Bulletin 05.1 states:

> Typically, the Department considers four factors in evaluating whether each respondent is subject to de facto governmental control of its export functions: 1) whether the export prices are set by, or subject to the approval of, a governmental authority; 2) whether the respondent has the authority to negotiate and sign contracts and other agreements; 3) whether the respondent has autonomy from the central, provincial and local governments in making decisions regarding the selection of its management; and 4) whether the respondent  retains the proceeds of its export sales and makes independent decisions regarding the disposition of profits or financing of losses.

The Remand Results, however, do not address these factors individually, but merely assumes that government ownership of the majority shareholders and government control over

the Jinqiao labor union provides the potential to exercise control over all of Jinqiao Flooring's

export activities.  Commerce stated (without further analysis of the facts):

> Finding that Jinqiao Flooring was majority-owned by the Chinese
> government, indicating the government's potential to exercise control over
> Jinqiao Flooring's export activities, Commerce determined that Jinqiao
> Flooring had not made the requisite affirmative demonstration to rebut the
> NME presumption.
>
> *      *      *
>
> This potential or ability to exercise control, or interest in exercising
> control, over Jinqiao Flooring's company operations extends specifically
> to Jinqiao Flooring's export activities, including the selection of
> management, the setting of export prices, the negotiation and signature of
> contracts and other agreements, and decision regarding the disposition of
> profits or losses."

Remand Results at 10-11.

Record evidence, however, is directly contrary to these statements.  Although Commerce

claimed that Jinqiao Flooring's separate rate certification and Section A response were relied

upon to perform its de facto analysis, see Remand Results at 10, it is evident that these

documents were ignored in Commerce's Remand Results.   Jinqiao Flooring's separate rate

certification, which was not rebutted, certified that 1) the firm's export prices were not set by, or

subject to the approval of any government entity; 2) the firm had independent authority to

negotiate and sign export contracts and other agreements; 3) that the firm had autonomy from all

levels of government in making decisions regarding the selection of management; 4) the firm did

not have to submit for approval any of its candidates for managerial positions within the firm to

any government entity; and 5) that the firm retained the proceeds of its export sales and made

independent decisions regarding the disposition of profits or the financing of losses.  Jinqiao

Flooring Separate Rate Certification at pages 4-5.

Similarly, Jinqiao Flooring's Section A response established that the company negotiated independently with its own U.S. customers and that no outside organization approved any aspect of the sales transactions.  *Id.* at 8-9.  Senior management was selected by the Board of Directors and the Labor Union; no government authority had the right to reject management appointees or to control the management selection process.  *Id.* at 9.  No restrictions were placed on the use of the company's export revenues.  *Id.*  Company profits were disposed in accordance with the decisions of the Board of Directors and the Labor Union.  *Id.* at 10.

Moreover, references to Jinqiao Flooring's Articles of Incorporation are distinctly absent from Commerce's Remand Results.  The Articles of Incorporation mandate the manner in which the company operates. As discussed in Jinqiao Flooring's 56.2 Brief:

> Article 24 of the Articles of Association designates the board of directors, and not the shareholder meeting, as the "management decision-making body of the company." *Id.* at Exhibit S4-2 at page 3.  Article 24.9 further bestows upon the board of directors the sole authority to "appoint or dismiss the general manager of the company {and} according to the nomination of the general manager appoint or dismiss the vice general manager, financial controller, chief accountant, managers of each department, each branch manager and determine their remuneration."
>
> Article 25 of the Articles of Association creates a five-member board of directors who are elected by the three shareholders.  Critically, Article 25 specifically designates the number of board members that each shareowner can elect.  "{T}he labor union elect{s} three directors as worker representatives and the other two contributors each elect one director." *Id.* at Exhibit S4-2 page 4.  Thus, majority control of the board of directors is placed solely to the Jinqiao Flooring Labor Union, which is authorized by the Articles of Association to appoint a majority of the board of directors.  Consequently, the board of directors is controlled by the Labor Union, and not the majority government shareholder or the shareholder meeting.  The Labor Union is also both the decision-making body of the company and the body that is solely responsible for the selection, removal and remuneration of company management.

Jinqiao Flooring's 56.2 Brief at 10-11.

Jinqiao Flooring's Articles of Incorporation also include provisions relating to the Labor

Union of the company.  These provisions are the only record evidence governing the operations

of the labor union relating to the period of review.  Jinqiao Flooring's 56.2 Brief stated:

> Article 42 of Jinqiao Flooring's Articles of Association authorizes the
> workers of the company to organize labor unions under the Chinese labor
> law.  Jinqiao Floorings 4th Supplemental Response, supra Exhibit S4-2 at
> page 6.  Article 46 authorizes management of the Labor Union is managed
> through the Worker's Congress, which is convened at least once a year.
> Id. at page 7 Article 47 authorizes the Labor Union to appoint and dismiss
> worker representatives to the board of directors and the board of
> supervisors through the Worker's Congress. *Id*.  Article 43 authorizes the
> formation of a labor union committee that is democratically elected by the
> workers and subject to the supervision of the workers. *Id*. at page 6.  The
> labor union committee signs contracts with the company on behalf of the
> workers and supervised the implementation of the contract. *Id*.  Article 44
> authorizes the Labor Union committee to democratically elect a chairman.
> The chairman is one of the three worker representatives appointed to the
> board of directors. *Id.*

*Id*. at 27.

Jinqiao Flooring's Articles of Association, the only evidence in the record relating to the

actual operation of the Jinqiao Flooring's Labor Union, do not indicate that any of its activities

or elections were influenced or controlled by the ACFTU or any other entity of the Chinese

government.

Instead of following the Court's Remand Order instructing Commerce to address relevant

arguments and evidence placed in the record by Jinqiao Flooring on the issue of state control,

Commerce's Remand Results relied solely upon its assertion "that the government has a

potential and an ability to control, and an interest in controlling Jinqiao Flooring various

activities including its export activities/function."  Remand Results at 13. *See also id*. at 10-11

and 41.  Commerce's reliance on potential control, rather than responding to record evidence

presented by Jinqiao Flooring establishing the absence of government control, has resulted in a

remand determination that is unsupported by substantial evidence in the administrative record. The Court should therefore reject Commerce's Remand Results and remand the action to Commerce for a second time in order to address the stated concerns of the Court as set for in its April 29 decision and Remand Order.

## II.   **Jinqiao Flooring's Status As A Mandatory Respondent**

The Remand Order held that "the Department shall calculate an antidumping duty rate of Jilin and use it in its construction of the all-other rate or provide a reasonable explanation for why it need not." *See* Remand Order at 33.  In response, Commerce has reviewed its long-term policy of applying a single rate to all exporters in an NME country who are unable to demonstrate independence from the government. *See* Remand Results at 18-30.  The problem with Commerce's analysis is that it assumes, contrary to substantial evidence in the record, that Jinqiao failed to rebut the NME presumption and demonstrate its independence from the China-wide entity.  As discussed above, Jinqiao has rebutted the presumption of governmental control in accordance with the criteria employed by Commerce.  The placing on the record of the *Aluminum Foil Report* does not alter the substantial evidence demonstrating that Jinqiao is an independent entity that is not controlled by the PRC government.  Commerce's determination that the labor union is controlled by the government is merely conclusory, and is not supported by the record evidence.   Moreover, Commerce's entire discussion applicable to its practice in NME cases (which Commerce acknowledges is not codified in the regulations) is contingent on its finding that Jinqiao is a state-controlled entity, a conclusion that is not substantiated by the evidence, even if the *Aluminum Foil Report* is taken into account.

Commerce has correctly noted in its Remand Results that "whether an exporter has rebutted the presumption of government control is a factual inquiry such that a court's evaluation

of the lawfulness of Commerce's determination to deny or grant a separate rate will vary from case to case." Remand Results at 21. Jinqiao agrees with this assessment, but maintains that the factual analysis undertaken by Commerce in the present case was misplaced because the only pertinent evidence in the record (notwithstanding the *Aluminum Foil R*eport, which has no bearing on the ownership of Jinqiao) shows that the Jinqiao Labor Union operated free from Chinese government control in accordance with Jinqiao Flooring's Articles of Association during the period of review.

Jinqiao agrees with the Court that application of the China-wide entity rate to the company is tantamount to unfair application of the adverse facts available ("AFA"). *See* Remand Order at 30 n. 19. Commerce appears to agree that Jinqiao has been a cooperative respondent, as it is undisputed that the company responded to all requests for information to allow Commerce to apply a calculated rate in a timely fashion. [1] Jinqiao agrees with the view of the Court that "having designated Jilin a mandatory respondent and thus a "known exporter," Commerce placed itself under the general obligation to determine for Jilin an "individual weighted average dumping margin." Remand Order at 30. It is undisputed that Commerce had all of the information it needed to determine an individual weighted-average dumping margin for Jilin. *Id*. Commerce's Remand Order is deficient in that the agency continues to fail to provide a reasonable explanation for why it is not obligated under the Court's order to calculate an antidumping duty rate for Jilin. Its only explanation is its conclusory determination,

---

[1] Commerce has recognized that "the application of the rate for the China-wide entity to Jinqiao Flooring was the result of Jinqiao Flooring's inability to demonstrate its independence from Chinese government control and not for a failure to cooperate with Commerce's examination of Jinqiao Flooring as a mandatory respondent in the instant administrative review." Remand Results at 25.

unsupported by the record, that Jilin has not rebutted the presumption that it is not government-controlled.  As the Court noted previously, "[b]eyond concluding that the NMW Policy should be applied, Commerce does little to explain why it did not determine Jilin's individual rate."  *Id*. The Remand results, although lengthy, do not rectify this deficiency by explaining why Jinqiao is not entitled to a separate rate despite its compliance and how the application of the China-wide rate to Jinqiao further the statutory goal of establishing an accurate rate for Jinqiao.

For the reasons stated herein, this Court should remand this case back to Commerce to calculate Jilin's individual antidumping rate based a comparison between U.S. prices and cost of production in China, as calculated through the application of surrogate values.

Respectfully submitted,

/s/ *Lizbeth R. Levinson*
Lizbeth R. Levinson
Ronald M. Wisla
Brittney R. Powell

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC  20006
Phone (202 461-3100

*Counsel to Jinqiao Flooring*

December 16, 2021