## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

|  |  |
|---|---|
| JILIN FOREST INDUSTRY JINQIAO FLOORING GROUP CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 18-00191 |

---

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

---

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

SONIA ORFIELD
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-0534

OF COUNSEL:

RACHEL BOGDAN
Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
United States Department of Commerce

January 14, 2022

Attorneys for Defendant

# TABLE OF CONTENTS

BACKGROUND ...........................................................................................................2

I.      Administrative Determination Under Review ..............................................2

II.     The Court's Remand Opinion and Order ....................................................3

III.    Remand Results ...........................................................................................5

ARGUMENT ..............................................................................................................7

I.      Standard Of Review .....................................................................................7

II.     Commerce's Separate Rate Analysis Complies With the Court's Remand Order ........7

III.    Commerce's Further Explanation of Its Assignment of the NME-Wide Entity
        Rate To Jinqiao Flooring Complies With The Court's Remand Order ......................11

CONCLUSION ...........................................................................................................18

i

# TABLE OF AUTHORITIES

**Cases**                                                                                            **Page(s)**

*Barnhart v. Walton,*
    535 U.S. 212 (2002) ........................................................................................... 13, 14

*Chevron, U.S.A. v. Natural Resources Defense Council,*
    467 U.S. 837 (1984) ............................................................................................... 13

*China Manufacturers Alliance, LLC v. United States,*
    1 F.4th 1028 (Fed. Cir. 2021) ......................................................................... passim

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ................................................................................................. 7

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) ................................................................................................. 7

*I.N.S. v. Elias-Zacarias,*
    502 U.S. 478 (1992) ................................................................................................. 7

*Jilin Forest Industry Jinqiao Flooring Group Co., Ltd. v. United States,*
    519 F. Supp. 3d 1224 (Ct. Int'l Trade 2021) ................................................. passim

*MacLean-Fogg Co. v. United States,*
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ......................................................... 7

*Nucor Corp. v. United States,*
    612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ......................................................... 7

*Sigma Corp. v. United States,*
    117 F.3d 1401 (Fed. Cir. 1997) ............................................................... 11, 12, 14

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) ......................................................................................... 13, 14

*Viraj Forgings, Ltd. v. United States,*
    283 F. Supp. 2d 1335 (Ct. Int'l Trade 2003) ....................................................... 13

*Zhejiang Machinery Import & Export Corp. v. U.S.,*
    521 F. Supp. 3d 1345 (Ct. Int'l Trade 2021) ................................................... 8, 11

**Statutes**

19 U.S.C. § 1673 ................................................................................................. 15

19 U.S.C. § 1675 ........................................................................................... 14, 15

19 U.S.C. § 1677 ......................................................................... 10, 11, 12, 14, 16

**Regulations**

19 C.F.R. § 351.107(d) ....................................................................................... 13

19 C.F.R. § 351.212(c)(1) ......................................................................... 5, 16, 17

19 C.F.R. § 351.213(b)(1) ................................................................................... 16

19 C.F.R. § 351.301(c)(4) ..................................................................................... 3

**Other Authorities**

*Antidumping Duties; Countervailing Duties*,
    61 Fed. Reg. 7,308, 7,311 (Feb. 27, 1996) ................................................. 14

*Department Practice for Respondent Selection in Antidumping Duty Proceedings
and Conditional Review of the Nonmarket Economy Entity in NME Antidumping Duty
Proceedings*,
    78 Fed. Reg. 65,963, 65,970 (Dep't of Commerce Nov. 4, 2013)............................ 16

*Final Determination of Sales at Less Than Fair Value: Sparklers from the People's
Republic of China*,
    56 Fed. Reg. 20,588 (May 6, 1991) ............................................................. 14

*Multilayered Wood Flooring from the People's Republic of China: Final Results of
Antidumping Duty Administrative Review, Final Determination of No Shipments, and
Partial Rescission*,
    83 Fed. Reg. 35,461 (Dep't of Commerce July 26, 2018)........................................... 2

*Notice of Final Determination of Sales at Less Than Fair Value: Silicon Carbide from the
People's Republic of China*,
    59 Fed. Reg. 22585 (May 2, 1994) ............................................................. 14

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| JILIN FOREST INDUSTRY JINQIAO FLOORING GROUP CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 18-00191 |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

<u>**DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**</u>

Pursuant to Rule 56.2(h) of the Rules of this Court, defendant, the United States, respectfully submits these comments in support of the final results of redetermination filed by the Department of Commerce, *see Final Results of Redetermination Pursuant to Remand Order*, November 16, 2021 (Remand Results), ECF No. 62, P.R.R. 6, C.R.R. 2,[1] in accordance with this Court's opinion and remand order, *Jilin Forest Industry Jinqiao Flooring Group Co., Ltd. v. United States*, 519 F. Supp. 3d 1224 (Ct. Int'l Trade 2021) (*Remand Order*), ECF No. 47. These comments respond to the comments filed by plaintiff Jilin Forest Industry Jinqiao Flooring Group Co., Ltd. (Jinqiao Flooring). *See* Jilin Forest Industry Jinqiao Flooring Group Co., Ltd. Comments on Remand Redetermination (Jinqiao Flooring Remand Comments), dated December 16, 2021, ECF No. 66.

---

[1] Citations to public and confidential documents from the administrative record are identified as "P.R. __" and "C.R. __," respectively and documents from the administrative remand record identified as "P.R.R." and "C.R.R," respectively.

The Court should sustain Commerce's Remand Results because they comply with the Court's order and are supported by substantial evidence and otherwise in accordance with law. Specifically, Commerce reconsidered its separate rate determination for Jinqiao Flooring and assignment of the China-wide entity rate to that company. Commerce continues to find that Jinqiao Flooring has failed to demonstrate its eligibility for a separate rate and thus is part of the China-wide entity. In addition, Commerce further explained the application of its non-market economy (NME) presumption and the resulting China-wide entity rate to Jinqiao Flooring. Accordingly, we respectfully request that the Court sustain the remand results.

## BACKGROUND

### I.   Administrative Determination Under Review

The administrative determination under review is the final results of the administrative review of the antidumping duty order covering multilayered wood flooring from the People's Republic of China for the period December 1, 2015 through November 30, 2016. *See Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Rescission*; 2015-2016, 83 Fed. Reg. 35,461 (Dep't of Commerce July 26, 2018) (final results) (P.R. 351), and accompanying Issues and Decision Memorandum (IDM) (P.R. 341).

In the final results, Commerce determined that Jinqiao Flooring is majority owned by two entities that are majority-controlled by the Chinese government, and thus determined it is the government, through its majority equity ownership, that has the ability to control, and an interest in controlling, the operations of Jinqiao Flooring, including its export activities. IDM at 7. Therefore, Commerce concluded Jinqiao Flooring failed to demonstrate eligibility for a separate rate. IDM at 7-8. Commerce also determined that, although a minority owner Chinese labor

union selected three of five members of the board of directors and two supervisors, this fact did

not rebut the presumption of *de facto* government control because all Chinese labor unions are

under government control based on the China NME Status Report Commerce issued in the

context of the aluminum foil proceeding. *Id.* at 39 (citing Memorandum, "*Aluminum Foil from

the People's Republic of China: China's Status as a Non-Market Economy*," dated October 26,

2017 (China NME Status Report)).  Accordingly, Commerce assigned Jinqiao Flooring the

China-wide entity rate.  *See Final Results* at 35,464.

**II.**     **The Court's Remand Opinion and Order**

The Court remanded to Commerce its separate rate determination and assignment of the

China-wide rate to mandatory respondent Jinqiao Flooring.  *Remand Order*, 519 F. Supp. 3d

1224 at 1231, 1246.  Regarding Commerce's separate rate determination, the Court concluded

that Commerce's determination of *de facto* government control over Jinqiao Flooring lacks the

support of substantial evidence and is not in accordance with law.  *Id.* at 1231.  The Court held

that Commerce must provide Jinqiao Flooring the opportunity, in advance of the draft results, to

submit written argument on the China NME Status Report in accordance with 19 C.F.R. §

351.301(c)(4).  *Id.* at 1233-34.

The Court also held that Commerce provided little discussion of how majority equity

ownership translates into control of export functions, remanding to Commerce to explain its use

of the phrase "export functions" as compared to "export activities" and "company operations."

*Id.* at 1234.  Further, the Court instructed Commerce to explain whether analysis of "export

functions" is required as part of its *de facto* analysis and if so, how that phrase plays a role in this

case.  *Id.*

3

Regarding Commerce's application of its NME policy to Jinqiao Flooring, the Court held that Commerce failed to explain how the application of its NME presumption, and the resulting application of the China-wide entity rate, to Jinqiao Flooring is in accordance with law and supported by substantial evidence. *Id.* at 1234-46. The Court held that, on remand, Commerce shall either calculate an antidumping duty rate for Jinqiao Flooring or provide a reasonable explanation for why it need not. *Id.* at 1246-47. The Court also outlined nine questions for Commerce to address :

1) The role played by the Mandatory Respondent Exception and how the Mandatory Respondent Exception's purpose of establishing an accurate rate for {Jinqiao Flooring} and an accurate all-others rate is advanced by not calculating an individual rate for {Jinqiao Flooring};

2) The purpose of the NME Policy and how the Policy's purpose is achieved by the application of the NME Policy to {Jinqiao Flooring};

3) The statutory and/or regulatory basis for a request for review of the China-wide entity by {Jinqiao Flooring};

4) The interplay of the NME Policy, the Mandatory Respondent Exception, and the purpose for the statute to determine accurate rates not only for Jilin but for all unexamined respondents subjected to the all-others rate;

5) Because of its importance to determining whether the law directs Commerce to calculate an individual rate for {Jinqiao Flooring}, a specific statement as to whether and how {Jinqiao Flooring} was under review individually or as part of the China-wide entity;

6)  An explanation as to why 19 C.F.R. § 351.212(c)(1) does not operate to continue Jilin's cash deposit rate, as the record seems to indicate that Commerce did not, apparently and/ or completely, "review" {Jinqiao Flooring};

7)  The specific statutes the Department is construing with respect to both the NME Policy and the Mandatory Respondent Exception and any legal theories upon which it relies if it seeks deference for the construction of the statute;

8)  An explanation of the Department's use of the various phrases "export functions," "export activities," and "company's operations," in particular a statement of the extent to which they differ or are synonymous, and a statement of the extent to which analysis of "export functions" is required as part of its de facto control analysis regarding {Jinqiao Flooring}, how that consideration affects its remand results, and how the phrase figures in this case; and

9)  If Commerce should assign the adverse facts available (AFA)-inclusive China-wide rate to {Jinqiao Flooring}, then explain, with specificity, why it is reasonable to apply such an AFA-inclusive rate when {Jinqiao Flooring} has, apparently, been fully compliant in responding to Commerce's requests for information and has not otherwise hindered or impeded the proceeding.

*Id.*

## III.  **Remand Results**

Consistent with the Court's direction, on remand, Commerce placed the China NME Status Report on the record and provided Jinqiao Flooring an opportunity to comment and to file in rebuttal new factual information in advance of the draft remand results.  Jinqiao Flooring submitted *no* rebuttal new factual information concerning the China NME Status Report.

5

On November 16, 2021, Commerce issued its remand results.  Commerce first outlined its *de facto* analysis framework in response to the Court's order.  *See Remand Order* at 519 F. Supp. 3d at 1234.  Commerce explained that in examining *de facto* government control, it examines four criteria and identified relevant questions it asks a respondent related to its *de facto* analysis, relevant to its analysis of "export functions."  Remand Results at 8-9.

Commerce explained that it continued to find that Jinqiao Flooring failed to demonstrate its eligibility for a separate rate and thus is part of the China-wide entity.  Commerce detailed Jinqiao Flooring's ownership makeup and determined that because Jinqiao Flooring was majority-owned by government entities, it failed to rebut the presumption that the Chinese government "has a potential, ability, interest, etc., in controlling the company in its export activities."  Remand Results at 11.  In response to Jinqiao Flooring's draft remand comments, Commerce stated that "in reexamining the record, Commerce does agree with Jinqiao Flooring that when labor union ownership is taken into consideration, Jinqiao Flooring is indeed wholly controlled by the government."  Remand Results at 40-41.  In addition, Commerce addressed "relevant arguments presented by {Jinqiao Flooring} on the issue of state control."  *Remand Order*, 519 F. Supp. 3d at 1234; *see also* Remand Results at 38-42.

Second, Commerce explained in detail its NME presumption, its application of the presumption, and the resulting China-wide entity rate to Jinqiao Flooring.  Remand Results at 16-30. Commerce provided detailed responses to each of the Court's questions regarding its NME Policy, including assignment of the China-wide entity rate to Jinqiao Flooring as a cooperative mandatory respondent.  Remand Results at 15-36, 43-44.   On this basis, Commerce continued to apply the NME presumption to Jinqiao Flooring and assign it the corresponding China-wide entity rate.  Remand Results at 3-4.

## ARGUMENT

### I.     Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C.  1516a(b)(1)(B)(i)).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Accordingly, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).  Rather, when Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, as here, the agency's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion.  *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

### II.     Commerce's Separate Rate Analysis Complies With the Court's Remand Order

Pursuant to the Court's order and specifically in response to the Court's eighth question, Commerce explained that it considers the four *de facto* criteria and the related questions that appear in the separate rate application and separate rate certification as part of its analysis of "export functions."  Remand Results at 9; *see also Remand Order* 519 F. Supp. 3d at 1231, 1234. Commerce explained that it uses the terms "export functions" and "export activities" interchangeably "to denote the tasks undertaken by a company in selling its merchandise outside

its own country" and that the term "company operations" refers to the general operations of a

company and "encompasses a broad range of business activities, inclusive of export

functions/activities, as well as management, board meetings, manufacturing, sales, advertising,

and marketing."  Remand Results at 9-10.

Based on Jinqiao Flooring's ownership makeup, Commerce determined that Jinqiao

Flooring failed to rebut the presumption that the Chinese government has a potential, ability,

interest, *etc.* in controlling the company in its export activities.  *Id.* at 11.  In particular,

Commerce explained that:

> This potential or ability to exercise control, or interest in exercising control, over
> Jinqiao Flooring's company operations extends specifically to Jinqiao Flooring's
> export activities, including the selection of management, the setting of export
> prices, the negotiation and signature of contracts and other agreements, and
> decisions regarding the disposition of profits or losses.   Specifically, the record
> reflects that Jinqiao Flooring's shareholders appoint the Board of Directors who
> have the right to "appoint or dismiss the general manager," and "according to
> nomination of the general manager, to appoint or dismiss the vice general manager,
> financial manager..."  Thus, through their appointment of the Board of Directors,
> Jinqiao Flooring's shareholders *i.e.*, its government shareholders, have the ability
> and potential to control, and interest in controlling, the company's operations,
> including Jinqiao Flooring's export activities.

 Remand Results at 11 (citations omitted).

Commerce then explained that a finding that the government has the potential to exercise

control as a majority owner "does not require a showing of actual control, but simply a potential

for government control" and that requiring such a showing would "erroneously reverse the

burden of rebutting the presumption of government control."  Remand Results at 11 (citing

*Zhejiang Machinery Import & Export Corp. v. U.S.*, 521 F. Supp. 3d 1345, 1352 (Ct. Int'l Trade

2021) ("Thus, because the burden is on a separate rate applicant to show that there is no potential

for government control, ZMC's various arguments that Commerce needed to show actual control

are unpersuasive.")).  Although Commerce is "not required to demonstrate actual government

control," Commerce found that record evidence demonstrated that the majority shareholders exercised their ability to control Jinqiao Flooring's operations, as its board of directors were required to convene and report to the shareholders, including its government shareholders. Remand Results at 12.  Further, as Commerce noted in the final results, the "Company Law of China" specifically allows a majority owner to exercise control over its holding.  *Id.* (citing Preliminary Separate Rate Analysis Memorandum for Jilin Forest Industry Jinqiao Flooring Group Co., Ltd., January 2, 2018 (citing SAQR at Appendix A-2, "Foreign Trade Law of the People's Republic of China")).

Jinqiao's argument that its separate rate certification and Section A response demonstrate it is free from *de facto* government control because export activities were controlled by the board of directors and labor union, Jinqiao Flooring Remand Comments at 6-7, fails to overcome the substantiality of the evidence, which demonstrates both the labor union and majority shareholders that appoint the board of directors are controlled by the Chinese government. Jinqiao does not dispute that its majority shareholders are controlled by the Chinese government. Jinqiao Flooring Remand Comments at 2.  In addition, although Jinqiao Flooring argued that the minority ownership labor union controlled Jinqiao Flooring by appointing three of the five board of directors and two of three supervisors, Commerce reasonably found that this does not rebut the presumption of *de facto* government control because record evidence demonstrates the labor union is controlled by the government.  Remand Results at 12-13.  As articulated in the China NME Status Report, that Jinqiao Flooring  did not rebut on remand, in China, "{l}abor unions are under the control and direction of the All-China Federation of Trade Unions (ACFTU), a government-affiliated and {Chinese Communist Party} CCP organ."  *Id.* at 12.  Commerce also affirmed its findings, based on the China NME Status Report, that:  (1) the ACFTU has a legal

monopoly on all trade union activities; (2) the Chinese government prohibits independent unions; and (3) the ACFTU presides over a network of subordinate trade unions. *Id.* at 12-13.

Jinqiao Flooring also argues that there is no record evidence demonstrating that the labor union was controlled by the Chinese government and that the China NME Status Report issued in the context of the investigation of aluminum foil from China is not relevant to this administrative review. Jinqiao Forest Remand Comments at 2-3. However, this argument ignores the stated role, as provided for in 19 U.S.C. § 1677(18)(C)(i), of Commerce's China NME status determination. Remand Results at 38. Although the China NME Status Report was issued in a separate investigation, Commerce conducted that inquiry into China's NME status nearly contemporaneously with this administrative review pursuant to its authority under 19 U.S.C. § 1677(18)(C)(i). That provision permits Commerce to make a determination with respect to a country's nonmarket economy status "at any time." *Id.* When Commerce makes an NME determination, "it shall remain in effect until revoked by the administering authority." *Id.* at 39 (citing 19 U.S.C. § 1677(18)(C)(i)). This inquiry into Commerce's NME status included an evaluation of the extent to which wage rates in China are determined by free bargaining between labor and management, where Commerce concluded that "{l}abor unions are under the control and direction of the All-China Federation of Trade Unions (ACTFU), a government-affiliated CCP organ." Accordingly, the China NME Status Report is relevant to this review and redetermination. *Id.* at 40.

Further, Jinqiao Flooring did not avail itself of the opportunity to place information on the record to rebut or otherwise undermine Commerce's determination that all Chinese labor unions are under the control and direction of a government-affiliated Chinese Communist Party organ. *Id.* at 40. Moreover, this Court has upheld as sufficient Commerce's findings articulated in the

China NME Status Report that all labor unions in China are controlled by the government.  *Id.* (citing *Zhejiang Machinery*, 521 F.Supp.3d at 1351).   Accordingly, the record supports Commerce's determination that Jinqiao Flooring failed to rebut the presumption of Government control.

### III.    Commerce's Further Explanation of Its Assignment of the NME-Wide Entity Rate To Jinqiao Flooring Complies With The Court's Remand Order

After determining that Jinqiao Flooring failed to rebut the presumption of government control, Commerce found that Jinqiao Flooring was not eligible for its own individual rate and, as part of the China-wide entity, was assigned the rate for the China-wide entity, a rate that was not subject to change in this review.  Remand Results at 14.  Commerce's assignment of the China-wide rate to Jinqiao Flooring is supported by substantial evidence, consistent with Commerce's NME practice, and otherwise in accordance with law.

In response to the Court's first, second, and fourth questions regarding Commerce's NME Policy identified above, Commerce provided:  (1) an overview of its broad authority under the statutory scheme; (2) the purpose of Commerce's NME presumption and the interplay with "limited examination" of all known producers and exporters under 19 U.S.C. § 1677f-1(c)(2); and (3) the relevant legal theories regarding deference to the agency.  Remand Results at 16-31. Commerce further explained application of its NME presumption and the implications of these issues for the rate for non-examined (separate rate) companies.  *Id.*

Commerce explained that, as described by the Federal Circuit, there exists a general statutory recognition of a "close correlation between a nonmarket economy and government control of prices, output decisions, and the allocation of resources."  Remand Results at 17 (citing *Sigma Corp. v. United States*, 117 F.3d 1401, 1405-06 (Fed. Cir. 1997) (citing 19 U.S.C. § 1677(18)(B)(iv)(v)).  This correlation is evident in various provisions of the statute, including

11

19 U.S.C. § 1677(18) (providing the definition of a non-market economy) and 19 U.S.C. §

1677b(c) (providing special rules for the determination of normal value if the subject

merchandise is exported from a non-market economy).  *Id.*  In addition, the Federal Circuit has

recognized that Commerce has "broad authority to interpret the antidumping statute and devise

procedures to carry out the statutory mandate."  *Id.* (citing *Sigma*, 117 F.3d at 1402).

Accordingly, Commerce explained that in light of its broad authority, and the general

recognition under the statute of the distinctions between a market economy country and an NME

country, it has developed a longstanding practice, codified in regulation, of applying a single rate

to all exporters in an NME country who are unable to demonstrate independence from the

government.  *Id.* at 18.  Indeed, "binding cases (too numerous to list in their entirety) have

uniformly sustained Commerce's recognition of an NME-wide entity as a single exporter for

purposes of assigning an antidumping rate to the individual members of the entity."  *China*

*Manufacturers Alliance, LLC v. United States*, 1 F.4th 1028, 1036-37 (Fed. Cir. 2021).  The non-

market economy presumption, although itself not specifically codified by regulation, "lays at the

heart of Commerce's practice and corresponding regulation of applying a single rate to the

NME-wide entity which is composed of individual exporters who do not qualify for a separate

rate."  *Id.*

In addition, the Federal Circuit has consistently sustained Commerce's use of the NME

presumption (*i.e.*, the NME Policy).  *Id.* at 21 (citing *China Manufacturers*, 1 F.4th at 1030-31)

("Our court has previously approved Commerce's application of a presumption of government

control over exporters in NME countries . . . .").  Commerce explained that it used the NME

presumption and single antidumping duty rate for the NME-wide entity in accordance with its

practice and precedent.  *Id.*  This application is reasonable "in light of Commerce's policy goals

of determining the same rate for all members of the same NME-wide entity to prevent potential manipulation of weighted-average dumping margins." *Id.* at 20.

Similarly, Commerce explained that, although the factual underpinnings of its separate rate determinations vary on a case-by-case basis, such factual variations do not impact the lawfulness of Commerce's practice to place a presumption of government control on exporters in a non-market economy proceeding and to determine for those companies that fail to rebut the presumption of government control a single antidumping duty rate.  Remand Results at 21-22 (citing *See China Manufacturers*, 1 F.4th at 1036-37); *see also China Manufacturers,* 1 F.4th at 1039-40.  Accordingly, in Commerce's view, these issues are settled and its use of the NME presumption in this review is consistent with law.  *Id.* at 22 (citing *Viraj Forgings, Ltd. v. United States*, 283 F. Supp. 2d 1335, 1342, 1353 (Ct. Int'l Trade 2003) ("Commerce considers the legal interpretations of prior antidumping and countervailing duty determinations precedential" and "{p}recedent, unless inapplicable or properly invalidated, binds this court and Commerce.").

In addition, Commerce explained that with respect to any concern that Commerce has not codified the NME presumption through notice-and-comment rulemaking, *Remand Order,* 519 F. Supp. 3d at 1240, Commerce's practices may be nonetheless be entitled to *Chevron* deference. Remand Results at 22 (citing *Barnhart v. Walton*, 535 U.S. 212, 221 (2002); *United States v. Mead Corp*., 533 U.S. 218, 230-231 (2001), holding that an agency is entitled Chevron deference even where its interpretation is adopted in means less formal than notice and comment rulemaking.); *see also Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984).  Further, Commerce has described these policies in detail in the context of its administrative proceedings and in adopting its regulation at 19 C.F.R. § 351.107(d).  *Id.* (citing *Final Determination of Sales at Less Than Fair Value:  Sparklers from the People's Republic of*

13

*China*, 56 Fed. Reg. 20,588 (May 6, 1991), *Notice of Final Determination of Sales at Less Than Fair Value: Silicon Carbide from the People's Republic of China*, 59 Fed. Reg. 22585 (May 2, 1994) and *Antidumping Duties; Countervailing Duties*, 61 Fed. Reg. 7,308, 7,311 (Feb. 27, 1996)).  Accordingly, the agency's "long standing" NME presumption, *see Barnhart*, 535 U.S. at 221, based upon its "specialized experience", merits deference here.  *See Mead*, 533 U.S. at 2167.

      Commerce explained that the application of the rate for the China-wide entity to Jinqiao Flooring was the result of Jinqiao Flooring's inability to demonstrate its independence from Chinese government control and not because of any failure to cooperate with Commerce's examination of Jinqiao Flooring as a mandatory respondent.  *Id.*  Commerce also explained that "when no request to review the NME-wide entity is filed with Commerce, as was the case in the instant administrative review, Commerce does not reexamine the rate applied to the NME-wide entity, but instead 'carries forward' the rate for the NME-wide entity as determined in a prior segment of the proceeding (*e.g.*, the investigation)."  *Id.* at 26.  Although the antidumping statute (*i.e.*, 19 U.S.C. § 1675(a) and 1677f-1(c)) does not specify whether the rate from the investigation or a completed review may be carried forward to subsequent periods of review in an NME proceeding, the Tariff Act of 1930, as amended, does not prohibit this practice, and Commerce has employed this practice in numerous reviews.  *Id.* at 26 (citing *China Manufacturers*, 1 F.4th at 1037-38).  Commerce's interpretation of the antidumping statute to permit this methodology was within its discretion.  *Id.* at 27 (citing *Sigma*, 117 F.3d at 1402 (acknowledging Commerce "has broad authority to interpret the antidumping statute and devise procedures to carry out the statutory mandate")).

      As additional support for the lawfulness of assigning Jinqiao Flooring the China-wide

entity rate, Commerce cited *China Manufacturers*, where the Federal Circuit held that: (1) the rate for the NME-wide entity may be based on an "individually investigated" rate within the meaning of 19 U.S.C. § 1673d(c)(1)(B)(i)(I); (2) "Commerce may permissibly assign such a rate to the unitary group of exporters in an NME country that have failed to rebut the presumption of government control;" (3) "{t}his rate may be based in whole or in part on {facts available} or AFA;" and (4) "Commerce may carry forward an initial NME entity rate, including adverse inferences built into that rate, in subsequent administrative reviews."  *Id.* at 28 (citing *China Manufacturers*, 1 4.th at 1039-40).

These holdings establish that Commerce was not required in this review to calculate an individual weighted-average dumping margin for Jinqiao Flooring, and appropriately applied the existing weighted-average dumping margin for the China-wide entity.  The rate for the China-wide entity represents an accurate rate for Jinqiao Flooring as a part of the China-wide entity because it failed to rebut the presumption of government control over its export activities.  As such, with respect to the antidumping duty rate applied to Jinqiao Flooring as part of the China-wide entity, Congress's intent that Commerce calculate accurate rates in administrative reviews was achieved.   Thus, Jinqiao Flooring's argument that Commerce failed to provide a reasonable explanation for why it is not obligated to calculate an antidumping duty rate for it is unpersuasive.  *See* Jilin Remand Comments at 10.

Moreover, with respect to the "all-others rate," Commerce explained that the statute does not expressly apply to either the NME-wide entity or to the companies not selected for individual examination in a review under 19 U.S.C. § 1675.   Commerce only calculates an "all-others" rate in a market economy antidumping duty investigation pursuant to section 19 U.S.C. § 1673d(c)(5).  Commerce does not calculate an all-others rate in an NME investigation or in an

administrative review, whether involving a non-market or market economy, but rather calculates

a rate for the NME-wide entity and a separate rate for those companies that have rebutted the

presumption of government control (or, in the case of a market economy administrative review, a

rate applicable to companies for which a review was requested, but not selected for individual

examination).  *Id.* at 28-30.  Commerce also explained that excluding a separate rate for a

mandatory respondent that has found to be part of the China-wide entity which was not under

review "does not impact the accuracy of the weighted-average dumping margin calculated for

companies not selected for individual examination."  *Id.* at 30-31.

In response to the Court's third question regarding request for review of the NME-wide

entity, *Remand Order,* 519 F. Supp. 3d at 1247, although Jinqiao Flooring has not argued that it

could not request review of the China-wide entity, Commerce explained that the only parties

who may seek review of the entity are a "domestic interested party" or an interested party

described in 19 U.S.C. § 1677(9)(B) (*i.e.*, the foreign government).  Remand Results at 31-32

(citing 19 C.F.R. § 351.213(b)(1) and *Antidumping Proceedings:  Announcement of Change in*

*Department Practice for Respondent Selection in Antidumping Duty Proceedings and*

*Conditional Review of the Nonmarket Economy Entity in NME Antidumping Duty Proceedings*,

78 Fed. Reg. 65,963, 65,970 (Dep't of Commerce Nov. 4, 2013)).

Further, in response to the Court's fifth and sixth questions regarding review of Jinqiao

Flooring, Commerce explained that Jinqiao Flooring was under review "because a request for

review of Jinqiao was made and Commerce initiated and conducted such review," which

included determining "whether a company {was}eligible for a separate rate."  *Id.* at 32-33.

Similarly, the entries of Jinqiao Flooring were under review and Commerce's regulation

concerning automatic liquidation for entries that are not subject to review, 19 C.F.R. §

351.212(c)(1), is inapplicable.  *Id.*

Finally, Commerce addressed the Court's ninth question regarding assigning the adverse facts available-inclusive China-wide rate to cooperative Jinqiao Flooring.  Commerce referenced the Federal Circuit's explanation in *China Manufacturers* that Commerce may carry forward an initial rate for the NME-wide entity, including the adverse inferences built into that rate, into subsequent administrative reviews.  Remand Results at 35.  This rate may be applied to a fully cooperative mandatory respondent which fails to rebut the presumption of government control. *Id.* (citing *China Manufacturers*, 1 F.4th at 1034 ("{i}t was thus ATM's failure to rebut the presumption of government control, not the composition of the {China}-wide entity or the cooperation or non-cooperation of ATM or any other potential member of the {China}-wide entity, that validated Commerce's determination to apply the AFA-derived PRC-wide rate to ATM."))

The Federal Circuit did not limit this holding to any particular set of facts. *Id.*  It did not hold that Commerce may carry forward an initial rate for the NME-wide entity with adverse inferences only if Commerce updates the rate for the NME-wide entity to reflect, in part, a calculated weighted-average dumping margin for the mandatory respondent deemed part of the NME-wide entity. *Id.*  Rather, the court recognized that Commerce may base the rate for the NME-wide entity "in whole or in part" on facts available or adverse facts available and apply that rate to a cooperative mandatory respondent that has failed to demonstrate its independence from control of the government in a subsequent segment of the proceeding. *Id.*  Accordingly, consistent with the statute, its practice, and Federal Circuit precedent, Commerce permissibly assigned Jinqiao Flooring the AFA-based rate for the China-wide entity pulled forward from the investigation.  This determination was reasonable and in accordance with law, and Jinqiao's

argument that application of the China-wide entity rate is tantamount to an unfair application of adverse facts available is unavailing.  *See* Jinqiao Flooring Remand Comments at 10.

## <u>CONCLUSION</u>

For these reasons, this Court should sustain Commerce's remand results and enter judgment in favor of the United States.

|  |  |
|---|---|
|  | BRIAN M. BOYNTON<br>Acting Assistant Attorney General |
|  |  |
|  | PATRICIA M. McCARTHY<br>Director |
|  |  |
|  | <u>s/ Tara K. Hogan</u><br>TARA K. HOGAN<br>Assistant Director |
|  |  |
|  | <u>s/ Sonia Orfield</u><br>SONIA ORFIELD<br>Trial Attorney |
| OF COUNSEL: | Commercial Litigation Branch<br>Civil Division |
| RACHEL BOGDAN<br>Attorney<br>Office of the Chief Counsel<br>    for Trade Enforcement and Compliance<br>United States Department of Commerce | United States Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 353-0534 |
| January 14, 2022 | Attorneys for Defendant |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that the brief,

<u>Defendant's Response To Comments On Remand Redetermination</u>, complies with the word-count limitation.  In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare the brief.  According to the word count, the brief contains 5288 words.


<u>/s/ Sonia Orfield</u>
January 14, 2022

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| _____ ) | |
| JILIN FOREST INDUSTRY JINQIAO ) | |
| FLOORING GROUP CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 18-00191 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

**<u>ORDER</u>**

Upon consideration of final results of remand, *see Final Results of Redetermination*

*Pursuant to Remand Order*, November 16, 2021 (Remand Results), ECF No. 62, the comments

on the remand filed by the parties, the administrative record, and all other pertinent papers, it is

hereby

ORDERED that the Department of Commerce's Remand Results are sustained in all

respects; and it is further

ORDERED that judgment is entered in favor of the United States.

_____
JUDGE

Dated: _____

20